# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROSAMARIA PRACHT,

    **Plaintiff,**

    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

Case No. 14-1403-JAR

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Rosamaria Pracht's application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1] Because the Court finds that the Commissioner's findings are supported by substantial evidence, the Court affirms the decision of the Commissioner.

**I.    Procedural History**

On February 25, 2012, Plaintiff applied for disability and disability insurance benefits, claiming an onset date of October 1, 2011. Plaintiff's application was denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled.

On December 1, 2014, Plaintiff timely filed this appeal of the ALJ's decision; the Commissioner timely filed its Answer and Administrative Record on May 26, 2015. More than four months later, Plaintiff had still not filed her Initial Brief, prompting the Court on October 7,

---

[1] 42 U.S.C. §§ 401–434.

2015, to issue an Order to Show Cause by October 23 why the case should not be dismissed.[2] On October 23, 2015, Plaintiff filed her Response to the Order to Show Cause, as well as her Initial Brief.

At this writing, the Court has not ruled upon whether Plaintiff's Response to the Order to Show Cause establishes excusable neglect warranting the Court's consideration of her brief. Plaintiff's Response to the Order to Show Cause is *eighteen pages* long, and provides an account of how her counsel's time from early August through October 2015 was occupied with depositions, hearings, a settlement conference, discovery and expert witness development in a medical malpractice case, a two-day trial, mandatory CLE courses, and extensive case-related travel. Plaintiff also describes how her counsel, Caleb Boone, a solo practitioner, had a medical problem that required a several-hour visit to an emergency room in September.

Further, in this eighteen-page account, Plaintiff devotes more than six pages to describing how counsel's office was in a disrupted state, and how counsel was "regularly engaged, on a daily basis," during this time period in an extensive demolition, remodeling, and reconstruction of his law office. Plaintiff describes how her counsel's law practice was hampered by his having to terminate the employment of both of his legal secretaries on September 24. But the two secretaries were not terminated for their failure to timely file or seek an extension of time to file Plaintiff's Initial Brief. They were terminated "due to a very substantial, drastic, and extremely costly error which they both made in ordering of the wrong color of office carpeting . . . . without authority, without permissions and without notifying . . . their employer, even after-the-fact."[3]

Rather than expend any more judicial energy on detailing how this does *not* constitute

---

[2]The Initial Brief was due 45 days after the administrative record was filed. D. Kan. R. 83.7.1(d).
[3]Doc. 14 ¶ 27.

excusable neglect, the Court has considered Plaintiff's Initial Brief, which is only *four pages* long, in contrast to the *eighteen-page* Response to the Order to Show Cause. As detailed below, Plaintiff's four-page Initial Brief is largely comprised of citation to inapposite matters in the record and specious legal argument. After considering this filing, the Court nonetheless finds that the ALJ's decision should be affirmed.

**II.     Standard for Judicial Review**

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.[4] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

**III.    Legal Standards and Analytical Framework**

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[7] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[8] The Secretary has

---

[4] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[5] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[6] *Id.*

[7] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[8] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

established a five-step sequential evaluation process to determine whether a claimant is disabled.[9] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[10]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[11] since October 1, 2011, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments of disorder of the back, arthritis and diabetes. But Plaintiff challenges the ALJ's determination at step three that none of these impairments meet or medically equal a listing in 20 CFR Part 404, Subpart P, Appendix 1.[12]

## IV. Discussion

Plaintiff contends that her impairments meet Listing 1.04(A) (nerve root compression), which describes:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[13]

It is Plaintiff's burden to show that the impairment matches a listing; and to show that her

---

[9] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[10] *Id.*

[11] *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[12] *See* 20 CFR §§ 404.1520(d), 404.1525, 404.1526 (2015).

[13] 20 C.F.R. Pt. 404, subpt. P, app. 1 § 1.04(A) (2015).

4

impairment matches a listing, she must show that it meets all of the specified medical criteria.[14]

Plaintiff argues that there is uncontradicted evidence in the record that she has neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss characterized or evinced by muscle weakness and sensory loss. Plaintiff cites to a September 15, 2007 MRI Patient Screening form that appears to be a self-completed form, and that provides no evidence concerning her back disorder or arthritis. Plaintiff also cites to an "August 17, 2009" examination by Dr. Jeff Sparacino, but the pages Plaintiff points to in the record concern Dr. Sparacino reading chest x-rays in September 2007, and concluding that the x-rays were "Negative for acute cardiopulmonary abnormality." The record does not otherwise reveal any examination by Dr. Sparacino that relates to Plaintiff's back disorder or arthritis.[15]

Plaintiff further cites to a December 15, 2011 follow-up examination by Dr. Hodges, after Plaintiff had received a diagnostic injection of lidocaine in her right shoulder. Dr. Hodges recorded that Plaintiff reported that after the lidocaine injection, she experienced numbness and tingling in her cervical spine. Dr. Hodges noted that he could not explain these "bizarre" symptoms in her cervical spine from an injection in her shoulder, but recommended an x-ray and MRI of Plaintiff's cervical spine.

Plaintiff also cites to the consultative examination performed by Dr. Schicker, who examined Plaintiff on June 16, 2012. Dr. Schicker found that Plaintiff had a limited range of motion in her lumbar spine, but she walked with a normal gait and had only mild difficulty with orthopedic movements such as getting on and off the examination table, heel and toe walking,

---

[14]*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[15]Other pages in the record that Plaintiff cites to are similarly inapposite. Pages 396 and 409 concern gynecological issues, not her back or arthritis. Pages 438 and 445 primarily concern diabetes and pain in her arm and wrist. And page 484 is simply a billing statement from Central Medical Consultants. The Court is mystified how counsel can, in good conscience, specifically cite to pages in the administrative record that have *nothing* to do with the subject propounded.

5

squatting, hopping and arising from the sitting position.[16]  This evidence simply does not support Plaintiff's argument that her severe back disorder causes the type of functional loss required to meet Listing 1.04(A).  For with this listing, as well as with the listings for other musculoskeletal system disorders, functional loss is defined as the inability to ambulate effectively, meaning suffering an extreme limitation of the ability to walk, or having such insufficient lower extremity functioning that the person requires a hand-held device to ambulate.[17]  Plaintiff did not require an assistive device to walk or ambulate during Dr. Schicker's consultative examination.

And, other than her assertion that she used to use a cane that was prescribed years ago, Plaintiff points to no other evidence that she needed this type of assistance.  The prescription for a cane or assistive device is not evidenced in the record.  In February 2011, Plaintiff reported to Dr. Alicia Bean that her musculoskeletal symptoms were well controlled with prescription medication.  In August 2011, Plaintiff denied that she had any musculoskeletal issues.   And, in an April 2012 Function Report provided by Plaintiff, she denied using any assistive devices, including crutches, walker, wheelchair, cane, brace or splint.

Finally, Plaintiff points to her own testimony at the ALJ hearing as evidence that she meets the listing for nerve root compression.  While this testimony concerned her subjective complaints of pain, limited mobility, and the effect on her activities of daily living, it did not provide evidence that she meets the listing for nerve root compression.

In short, Plaintiff points to no evidence, uncontradicted or otherwise, that supports her

---

[16]Nor is there evidence that Plaintiff had a compromised ability to engage in fine or gross motor movements.  The ALJ found, and Plaintiff does not challenge, that she is able to use her hands to operate a computer on a daily basis.

[17]*See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.04(A), 1.00(B)(2)(a)-(b) (2015).

assertion that she has nerve root compression evidenced by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss characterized or evinced by muscle weakness, and sensory loss, or otherwise.  The objective medical evidence supports the ALJ's finding.  And, the subjective evidence offered by Plaintiff is at best conflicting.  Finally, Plaintiff's argument that the ALJ's finding that she has a severe back disorder contradicts his finding that she does not meet a listing is a specious argument.  The mere existence of a severe impairment does not mean that Plaintiff's impairment meets or medically equals a listing and does not mean that Plaintiff is disabled.

The Court finds that the ALJ thoroughly considered and discussed the evidence in concluding that there is no evidence that Plaintiff meets the requirements of Listing 1.04 because she "does not have evidence of nerve root compression, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication."[18]  Because the ALJ did not err, and because there is substantial evidence supporting the determination that Plaintiff does not meet a listing, the decision of the Commissioner must be affirmed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS FURTHER ORDERED THAT** the Order to Show Cause is **MOOT**.

**IT IS SO ORDERED.**

Dated: January 7, 2016

                                          S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE

---

[18] A.R. at 42 (Doc. 11).